OSTERHAUS, J.
Jeffrey Lance Hill, Sr., and Linda Petry Hill appeal an order granting final summary judgment on their takings claim on grounds that the Suwannee River Water Management District possesses absolute quasi-judicial immunity from suit. We reverse because the District’s actions that flooded the Hills’ property weren’t rulings or judicial acts that qualify to receive quasi-judicial immunity.
I.
The Hills, their pond and dam, and the Suwannee River Water Management District have a long history. In 2006, the District sought an injunction against Mr. Hill’s company, El Rancho No Tengo, Inc., asserting that it must get a permit to repair the dam at the farm, which had eroded after significant rainfall in 2003. According to the final permanent injunction order from 2007, water had flowed out through a dam spillway into adjacent fields and beyond, depositing a large amount of farm soil into Columbia County’s Alligátor Lake Recreational Area, southwest of the dam. Everyone agreed that repair was necessary to keep the dam safe. Mr. Hill and his children proceeded to work on fixing the dam without a permit and without the help of anybody with formal training in the construction and repairs of dams. The final injunction order, however, found the work to be improperly done and to have a significant likelihood of failing and causing further damage. It required Mr. Hill’s company “forthwith [to] drain the dam to the lowest level feasible and, within 60 days of the entry of this order, provide to [the District] engineering certification of the dam and its appurtenant works and an operation and maintenance plan.” The injunction further ordered that the defendant “shall not impound water to its full capacity behind the dam until [the District] provides written approval ... of the certification and operation and maintenance plan.” Mr. Hill’s company appealed the injunction order, but this court affirmed. See El Rancho No Tengo, Inc. v, Suwannee River Water Mgmt. Dist., 6 So.3d 56 (Fla. 1st DCA 2009).
Since that time, neither the company nor the Hills have complied with the injunction order, either to drain their pond (an affidavit attached to the Third Amended Complaint refers to the pond as the Hills’ pond), or to satisfy the injunction’s required maintenance and operation plan requirements. The District has repeatedly inspected the dam, found the water-level dangerously high, and sought the Hills’ compliance to drain the water as required by the court’s injunction, but to no avail. The District returned to the circuit court again-and-again for relief due to the water-level. And the circuit court responded by issuing multiple contempt orders authorizing the District “[to drain] the impoundment to the lowest level feasible and [to remove] as much of the dam in the vicinity of the principal spillway as necessary to allow water to continuously flow unimpeded downstream from the impoundment.” Mr. Hill’s affidavit attached to the third Amended Complaint states that the pond has been drained four times between 2008 and 2010.
The Hills didn’t challenge the various contempt orders or findings therein, but filed an independent court action claiming a real property taking, among other things, in 2011. The Hills alleged that the *1102 District’s drainage actions flooded their farm’s sixty acres and has denied them viable and beneficial use of their land since September 2008 without any compensation. The Hills sought an order to cease the flooding caused by the District and compensatory damages of at least one million dollars.
After a hearing, the circuit court granted final summary judgment for the District. The order concluded that the District possessed quasi-judicial-immunity with respect to the takings claim because its actions were taken under the authority of court orders. The Hills appealed the summary judgment order.
II.
The circuit court’s order granting summary judgment involves a pure question of law that we review de novo. Jax Utils. Mgmt., Inc, v. Hancock Bank, 164 So.3d 1266, 1269 (Fla. 1st DCA 2016); Caribbean Conser. Corp. v. Fla. Fish & Wildlife Conserv. Comm’n, 838 So.2d 492, 500 (Fla. 2003).
The circuit court granted summary judgment for the District in this case on quasi-judicial immunity grounds. “A judge or quasi-judicial official may claim judicial immunity only if he can demonstrate: (1) the ruling in question was a ‘judicial act;’ and (2) there was jurisdiction to issue the ruling.” Fuller v. Truncale, 50 So.3d 25, 28 (Fla. 1st DCA 2010). “When these two prongs can be shown, the judge or quasi-judicial official may claim judicial immunity, even if the ruling in question was unwise, reckless, or malicious.” Id. The District in this case isn’t a judge or judicial official. For judges, absolute immunity is recognized “because of the special nature of their responsibilities.” Butz v. Economou, 438 U.S. 478, 511, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). But other officials too may be considered “quasi-judicial” officers and receive “quasi-judicial” immunity based on the functional comparability of their judgments with those of judges. Id. at 512, 98 S.Ct. 2894. A recent Fourth District opinion hinged absolute immunity for nonjudicial officials, for instance, on whether the action was “integrally related to the judicial process. Absolute quasi-judicial immunity for nonjudicial officials is determined by a functional analysis of their actions in relation to the judicial process.” Zoba v. City of Coral Springs, 189 So.3d 888, 891 (Fla. 4th DCA 2016) (quotation omitted).
We recognize that courts in Florida and elsewhere have applied quasi-judicial immunity in many instances where non-judges have made decisions resembling judicial acts. See, e.g„ Fuller, 50 So,3d at 28 (immunity applied to clerk of court’s adjudication of traffic infractions and suspending drivers’ licenses); Fong v. Forman, 105 So.3d 650, 653 (Fla. 4th DCA 2013) (same); Dep’t of Highway Safety v. Marks, 898 So.2d 1063 (Fla. 5th DCA 2005) (decisions of a hearing officer); Andrews v. Fla. Parole Comm’n, 768 So.2d 1257 (Fla. 1st DCA 2000) (decisions by the Parole Commission); Office of State Attorney, Fourth Judicial Cir. of Fla. v. Parrotino, 628 So.2d 1097, 1098 (Fla. 1993) (decisions by state attorneys); Johnson v. Harris, 645 So.2d 96, 98 (Fla. 5th DCA 1994) (immunity applied to a date stamp placed by a judge’s assistant); see also Martin v. Hendren, 127 F.3d 720, 721 (8th Cir. 1997) (immunity applied to a law enforcement officer’s courtroom action taken at the judge’s behest). But in these cases, the courts applied immunity to decisional actions that were qualitatively different than what occurred here. The District’s actions here, draining a pond and flooding fields, isn’t part and parcel of the judicial process, or functionally comparable to the work of judges—making decisions, resolving disputes, adjudicating rights, processing cases, and the like. See Montejo v. Martin *1103 Mem’l Med. Ctr., 935 So.2d 1266, 1270 (Fla. 4th DCA 2006) (rejecting a hospital’s quasi-judicial immunity claim because its action wasn’t co-extensive with immunity afforded judges). And so, we cannot affirm the decision to grant final summary judgment to the District on quasi-judicial immunity grounds.*
III.
We thus REVERSE the circuit court’s order granting summary judgment and REMAND for additional proceedings.
BILBREY and WINOKUR, JJ., CONCUR.

 Even if the District’s actions were functionally equivalent to judicial acts, we note that judicial decisions aren’t necessarily immune from takings claims. See Stop the Beach Renourishment, Inc. v. Fla. Dept. of Envtl. Prot., 560 U.S. 702, 715, 130 S.Ct. 2592, 177 L.Ed.2d 184 (2010) (Scalia, J., plurality opinion) (''[T]he Takings Clause bars the State from taking private property without paying for it, no matter which branch is the instrument of the taking. ... [A] legislative, executive, or judicial restriction of property use may or may not be [a taking], depending on its nature and extent. But the particular state actor is irrelevant.”) (emphasis in original).